## Bertha Smith, Appellee, v. Henry P. S. Smith, Appellant.

HUSBAND AND WIFE—*abusive conduct of husband's relatives as ground for separate maintenance of wife.* A decree awarding the wife separate maintenance is sustained by evidence that following the marriage the husband took his wife to his parent's home to live, that she was there subjected to much verbal abuse by the father-in-law and also to physical violence without protest or remonstrance by the husband, that the father-in-law finally ordered her to leave his home, which she did, commencing a suit for separate mainte- nance which was dismissed upon the husband's promise to provide a separate house for his family, that he provided a separate house very close to his father's home and that after the family moved into it the abusive conduct by the father continued without protest from the husband, that after the father's death the husband's broth- er took over the management of the farm and his conduct was more intolerable than had been the father's, that the husband con- sented to such conduct and subjected the wife to physical violence and neglected her while she was ill.

Appeal from the Circuit Court of Madison county; the Hon. M. R. SULLIVAN, Judge, presiding. Heard in this court at the March term, 1922. Affirmed. Opinion filed July 11, 1922. *Certiorari* de- nied by Supreme Court (making opinion final).

D. G. WILLIAMSON, for appellant; J. L. SIMPSON, of counsel.

BURTON & BURTON, for appellees.

MR. JUSTICE BARRY delivered the opinion of the court.

This is an appeal from a decree awarding appellee separate maintenance of $1,800 per year and $1,000 for solicitors' fees. The parties were married August 17, 1896, and six children were born to them, four of whom are living. After the marriage appellant took his wife to the home of his father on a farm near Ed- wardsville, Illinois, and they occupied a part of the

father's house and during the first five years of their married life four of the children were born. Appellant operated the farm for his father, who owned the cows. Appellee took care of the milk and churning in addition to her other duties and half of the butter went to appellant's parents. As it frequently happens in such cases the relations became somewhat strained between appellee and her husband's relatives. Finally in June, 1902, the elder Smith was in appellee's kitchen and she told him that she was not satisfied with the butter business, whereupon, he became very angry and abusive, and, in the presence of appellant, subjected her to physical violence without a protest from him. On that occasion the father said: "She can take her rags and leave the place; she is not wanted here, and she is not satisfied here," and still no remonstrance on the part of the appellant and no word of comfort or sympathy to appellee.

She then left the Smith home and with her children went to her father's house. In November, 1902, she filed a bill for separate maintenance and after the cause was heard and taken under advisement by the court their minister interceded at the request of appellant and a reconciliation was effected. Appellant agreed that if she would dismiss her suit and return and live with him he would build a house separate and apart from his parents and that she should have better treatment. He then built a small story and a half, five-room house in the rear of and close to his father's home and appellee and the children returned to the new home, but it was not long until the father-in-law again became abusive to appellee, and when she told him to keep out of her kitchen appellant told her that the father had a right there. In fact, appellant seemed disposed to side with his father on all occasions as against his wife.

Appellant spent much of his time at his father's home while appellee was never invited there and her

children were frequently driven out of the yard of the elder Smith.

In 1908 the father-in-law died and appellant inherited a large amount of property. Louis Smith, a brother of appellant, then came to live in the old home and appellee and her children were given to understand that the brother was boss there. He served written notice on appellee that she and the children would be prosecuted if they trespassed on his land. The brother's attitude toward appellee and her children was even more intolerable than had been that of appellant's father. So far as the record shows, appellant consented to the brother's course of conduct and showed no disposition to change conditions or to live elsewhere.

There is evidence in the record to the effect that the brother said to some of the children: "Who told you to come back? You come out here. Go, Go, Go," and that one of them replied, "Didn't papa call us up and plan a good home?" and that the brother then said to appellant, "Did you do that? Well, a person never knows what you will do." There is also evidence that the brother said to appellee in the presence of appellant, "We simply want to get a plain divorce this time, we want to get the divorce this time," and appellant said nothing in response to that remark. Apparently appellant understood his marriage vow to require him to cleave to his father and brother even though it destroyed the peace and happiness of his wife.

There is also evidence to the effect that appellee was in poor health and submitted to an operation. That instead of being with her during the operation appellant went to an entertainment and paid her but little attention while she was confined to her bed thereafter. There is also evidence that appellant subjected her to acts of physical violence. While appellee may not have been as sweet at all times as a wife should be, yet in view of the whole situation, the indignities to

which she was subjected by the father and brother of appellant and apparently with his consent and approval it is really strange that she remained with him as long as she did. The chancellor saw and heard the witnesses and was in a better position to judge of their credibility than we are from a consideration of the cold record.

If a husband pursues a persistent, unjustifiable and wrongful course of conduct towards his· wife, which necessarily renders her life miserable and living with him as his wife unendurable, she is not bound to live with him, and living separate and apart from him under such circumstances is without her fault within the meaning of the statute. *French v. French*, 302 Ill. 152-161. The rule must be the same when the husband insists on living with or so near his relatives that their improper conduct towards his wife, and to which he consents, is highly calculated to and does in fact destroy her peace and happiness.

We are of the opinion that the decree is fairly sustained by the evidence. It is, therefore, affirmed.

*Affirmed.*